IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

20 APR 14 PM 1:56

CLERK_____
SO. DIST. OF GA.

DISCOTHEQUE, INC. and THELMORE   *
JAMES LESTER, as Executor of      *
the Estate of James Thelmore      *
Lester, and Next of Kin,          *
                                  *
       Plaintiffs,                *
                                  *
          v.                      *          CV 119-074
                                  *
AUGUSTA-RICHMOND COUNTY,          *
GEORGIA, et al.,                  *
                                  *
       Defendants.                *

_____

O R D E R

_____

Before the Court is the Parties' joint motion for consent
injunction. (Doc. 13.) For the following reasons, the Parties'
motion is **GRANTED**.

I. BACKGROUND

Plaintiffs filed the present action seeking declaratory and
injunctive relief relating to the operation of two adult
entertainment establishments in Augusta, Georgia, Joker's Lounge
and the Discotheque Lounge ("Lounges"). (See generally, Compl.,
Doc. 1.)

A. The Lounges

James Lester began operating Joker's Lounge in 1971 and the
Discotheque Lounge in 1972. (Compl., ¶¶ 22-23.) Plaintiff

Discotheque, Inc. ("Discotheque") assumed ownership of the Lounges in 1981. (Id. ¶ 24.) In early 2019, James Lester's health started to fail, and he succumbed to his ailments. (Id. ¶ 65; see id. ¶ 67.) Although Plaintiffs allege Plaintiff Discotheque owns and operates the Lounges, it appears from the pleadings that the Lounges were brought under Plaintiff Discotheque's corporate umbrella, but licensing related to the operation of the Lounges remained in James Lester's name. See id. ¶¶ 67-68 (alleging James Lester's Estate is operating the Lounges and no petition to transfer relevant licenses has occurred). The Lounges are Augusta's only live nude dancing establishments. Id. ¶ 67.

**B. Challenged Ordinances**

Plaintiffs' complaint primarily focuses on four sections of the Augusta-Richmond County Code ("A.R.C.C.") related to the regulation of the adult entertainment business. (See id. ¶¶ 31-68.) Plaintiffs allege the challenged ordinances are unconstitutional, seek a declaration to that effect, and ask the Court to enjoin their enforcement. (Id. ¶¶ 69-81.)

The complaint sets forth five discernable challenges to specific sections of the A.R.C.C.: (1) The Adult Licensing Code (id. ¶ 70); (2) The Alcohol Code (id.); (3) The Adult Zoning Code (id.); (4)(a) The Business Tax Code - Regulatory Fee (id. ¶ 71); and (4)(b) The Business Tax Code - Unbridled discretion to revoke a Business Tax Certificate (id.).

2

1. The Adult Licensing Code

Plaintiffs' primary issue with the Adult Licensing Code appears to be the provision related to inheriting an adult entertainment establishment permit.

> No adult entertainment establishment permit may be sold, transferred or assigned by a permittee, or by operation of law, to any other person or persons. Any such sale, transfer or assignment or attempted sale, transfer or assignment shall be deemed to constitute a voluntary surrender of such permit, and such permit shall thereafter be null and void . . . .

A.R.C.C. Sec. 6-1-15. In light of James Lester's aforementioned health issues in 2019, Defendants considered amending the Adult Licensing Code's transfer prohibition to allow inheritance. (Compl., ¶¶ 65-66.) The Augusta-Richmond County Commission rejected the amendment. (Id. ¶ 66.) Plaintiffs also reference several additional provisions in the Adult Licensing Code related to obtaining an adult entertainment permit. (Id. ¶¶ 34-40.)

2. The Alcohol Code

As with the Adult Licensing Code, Plaintiffs' primary contention with the Alcohol Code appears to be the transferability provision:

> (a) Generally. Licenses hereunder shall not be transferable, except as otherwise provided herein. . . . (b) Exceptions. (1) Estate administration, etc. In case of the death of any person holding such a license, or any interest therein, the same may be transferred to the administrator, executor, or the lawful heirs of the deceased person, if otherwise qualified.

A.R.C.C. Sec. 6-2-70(a), (b)(1). As noted below, Plaintiffs omit any allegation that they sought transfer of the relevant alcohol license.

### 3. The Adult Zoning Code

Plaintiffs next take issue with the Adult Zoning Code. The relevant code section prohibits adult entertainment businesses within "1,000 feet of" several different establishments. A.R.C.C. Secs. 6-1-9(a). The Adult Zoning Code, however, contains a provision permitting certain nonconforming uses: "Any sexually oriented business lawfully operating as of January 1, 2003 that is in violation of subsection[] (a) . . . of this section shall be deemed a nonconforming use. Such use will be permitted to continue unless voluntarily discontinued for a period of [thirty] days or more." Id. Sec. 6-1-9(e). Both Lounges began operating prior to January 1, 2003.

### 4. The Business Tax Code

Plaintiffs challenge two aspects of the Business Tax Code. First, the regulatory fees imposed on adult entertainment establishments, and second, "the license and inspection department['s] . . . unbridled discretion to revoke a Business Tax Certificate from a live adult entertainment business." (Compl., ¶ 71.)

a. *Regulatory Fees*

The Business Tax Code imposes the following regulatory fees: (1) $110 per day for Adult Entertainment (live); (2) $110 per year for Dance Halls; and (3) $275 per year for Entertainment Venues. A.R.C.C. Sec. 2-1-3(c); see also A.R.C.C. Sec. 6-6-42(d).

b. *License and Inspection Department Discretion*

Under A.R.C.C. Sec. 6-6-42(e), the License and Inspection Department possesses the authority to suspend any Business Tax Certificate for a number of enumerated reasons. The A.R.C.C. requires an adult entertainment establishment to have a Business Tax Certificate to operate. Id. Secs. 6-1-3(h); 6-1-5; 6-1-6.

## C. Joint Motion for Preliminary Injunction

Considering the asserted challenge to the various A.R.C.C. sections, the Parties seek a joint preliminary injunction to allow the Lounges to continue operation in their traditional format pending the resolution of the present dispute. (Joint Mot. for Prelim. Inj., Doc. 13, ¶ 22.) Upon reviewing the joint motion, though, the Court recognized potential standing issues. (Order to Show Cause, Doc. 14, at 4-5.) For example, the complaint, on its face, appears to lack allegations that Defendants have enforced or attempted to enforce the regulations in question against Plaintiffs. Instead, the complaint alleges anticipated and speculative harm that Plaintiffs may soon face. See, e.g., id. ¶¶ 67 ("Now that the Estate is operating the clubs, the plaintiffs

fear that Augusta will attempt to enforce the Adult Licensing Code's non-transferability provisions against them."), 68 ("If the Estate were to apply to Augusta's Director of Planning & Development to allow the transfer of the alcohol licenses to it, the Director would do so only upon prohibiting adult entertainment, i.e., it would be futile for the plaintiffs to pursue transfer of the alcohol licenses . . . ."). The Court ordered Plaintiffs to appear and show cause why they possess standing to challenge the ordinances at issue. (Id. at 5.)

**D. Standing Hearing**

In the standing hearing, the Court concluded that Plaintiffs established standing as to challenges to certain ordinances. Questions remained, however, regarding other claims. Therefore, the Court agreed to accept briefing regarding Plaintiffs' standing to challenge the Alcohol Code and the Adult Zoning Code. (See Clerk's Minutes, Doc. 15.) Plaintiffs filed their standing brief (Doc. 16), and Defendants' responded, partially opposing the assertions contained in Plaintiffs' brief (Doc. 17).


## II. STANDING

The Court first addresses the standing question to ensure it possesses jurisdiction to address substantive aspects of this action.

## A. Legal Standard

"The Constitution of the United States limits the subject matter jurisdiction of federal courts to 'Cases' and 'Controversies.'" CAMP Legal Defense Fund, Inc. v. City of Atlanta, 451 F.3d 1257, 1269 (11th Cir. 2006) (citing U.S. CONST. art. III, § 2). "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Therefore, "[s]tanding is the threshold question in every federal case, determining the power of the court to entertain the suit." CAMP Legal Defense Fund, 451 F.3d at 1269 (internal quotation marks omitted) (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)). As with other subject matter jurisdiction requirements, "federal courts always have an obligation to examine sua sponte" a plaintiff's satisfaction of standing necessary to bestow jurisdiction to the federal courts. Kelly v. Harris, 331 F.3d 817, 819 (11th Cir. 2003).

In order to establish standing, Plaintiffs must demonstrate elements commonly known as (1) injury in fact, (2) traceability, and (3) redressability.[1] See Koziara v. City of Casselberry, 392 F.3d 1302, 1304–05 (11th Cir. 2004) (citing Friends of the Earth, Inc. v. Laidlaw, Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180–81

---

[1] As stated in the Court's Show Cause Order, the Court is primarily concerned with the injury in fact element. (Order to Show Cause, at 3 n.2.)

(2000)). "The party invoking federal jurisdiction bears the burden of establishing these elements." Lujan, 504 U.S. at 561. When a plaintiff is seeking injunctive and declaratory relief, as is the case here, she "must allege facts from which it appears there is a substantial likelihood that [she] will suffer injury in the future" to satisfy the injury element of standing. AA Suncoast Chiropractic Clinic, P.A. v. Progressive Am. Ins. Co., 938 F.3d 1170, 1179 (11th Cir. 2019) (quoting Malowney v. Fed. Collection Deposit Grp., 193 F.3d 1342, 1346-47 (11th Cir. 1999)). "The plaintiff must present 'specific, concrete facts' showing that the challenged conduct will result in a 'demonstrable, particularized injury' to the plaintiff so that the plaintiff 'personally will benefit in a tangible way' from court action." Cone Corp. v. Fla Dep't of Transp., 921 F.2d 1190, 1204 (11th Cir. 1991) (quoting Warth, 422 U.S. at 508). "The injury must be real and immediate, not conjectural or hypothetical." Id. (citations and internal quotation marks omitted); accord Lujan, 504 U.S. at 560; Elend v. Basham, 471 F.3d 1199, 1207 (11th Cir. 2006). "In the absence of standing, a court is not free to opine in an advisory capacity about the merits of a plaintiff's claims." Bochese v. Town of Ponce Inlet, 405 F.3d 964, 974 (11th Cir. 2005).

When evaluating standing at the pleadings stage, courts accept the allegations in the complaint as true. Warth, 422 U.S. at 501. Additionally, a court must evaluate standing to challenge

each ordinance, and standing to contest a certain ordinance, alone, does not confer standing to challenge other ordinances. Granite State Outdoor Advert., Inc. v. City of Clearwater, 351 F.3d 1112, 1117 (11th Cir. 2003) (finding the plaintiff lacked standing to challenge certain ordinances when the plaintiff "suffered no injury regarding any other provision" of the statutory section).

## B. Discussion

Generally, under the standing injury prong, the plaintiff must show the defendant's enforcement of the ordinance against it is imminent. Compare Church v. City of Huntsville, 30 F.3d 1332, 1339, 1340-41 (11th Cir. 1994) (finding no standing to enjoin conduct, on one hand, when small likelihood of injury existed), and Centerfold Club, Inc. v. City of St. Petersburg, 969 F. Supp. 1288, 1294 (M.D. Fla. 1997) (finding the plaintiff lacked standing when closure was not due to enforcement of challenged ordinance), with Church, 30 F.3d at 1338-39 (finding standing to seek preliminary injunction, on the other hand, when a substantial likelihood of continued action against plaintiff existed), and Lockridge v. City of Oldsmar, 475 F. Supp. 2d 1240, 1250 (M.D. Fla. 2007) (finding standing to challenge ordinances under which the city denied the plaintiff's application). Specifically, regarding the Adult Licensing Code, Alcohol Code, and Adult Zoning Code, Plaintiffs alleged no actual enforcement of the ordinances.

The Eleventh Circuit has established that "an actual injury can exist when the plaintiff is chilled from exercising her right to free expression or forgoes expression in order to avoid enforcement consequences." Wilson v. State Bar of Ga., 132 F.3d 1422, 1428 (11th Cir. 1998) (quoting N.H. Right to Life Political Action Comm. v. Gardner, 99 F.3d 8, 13 (1st Cir. 1996)). At this stage, Plaintiffs must allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution." Id. (emphasis omitted) (citation omitted). "If no credible threat of prosecution looms," however, "the chill is insufficient to sustain the burden that Article III imposes." Id. Threatened prosecution or likely prosecution also satisfy the standing requirement. CAMP Legal Defense Fund, 451 F.3d at 1276.

## 1. Standing Determined in the Show Cause Hearing

The Court found that the allegations in the complaint demonstrated standing to challenge the Adult Licensing Code and the Business Tax Code. First, Plaintiffs may sustain challenges to the Adult Licensing Code. Although Plaintiffs concede they did not seek transfer of the necessary permit under the Adult Licensing Code and the complaint contains no indication that Plaintiffs received notice of imminent enforcement, injury in fact is shown.

The transfer provision primarily at issue expressly prohibits the transfer of an adult entertainment establishment permit.

Regardless of whether Plaintiffs applied to seek transfer of the adult entertainment permit, there is no exception under the ordinance to allow the sought-after transfer. Therefore, following James Lester's passing, Plaintiff Discotheque had two options: (1) cease operating to avoid enforcement consequences or (2) knowingly continue operation without proper permitting with the risk of prosecution. Considering Plaintiffs contend an unconstitutional ordinance forced them into this conundrum, Plaintiffs are in a strong position to assert standing to challenge the Adult Licensing Code.

Additionally, the complaint contends that the Lounges are the only nude dancing establishments in Augusta. Plaintiffs further allege that, with the knowledge of James Lester's failing health, Defendants considered amending the Adult Licensing Code to permit inheritance. For these reasons, despite the ordinance's universal application within Augusta, Plaintiffs imply that Defendants were focused on the inheritance provision with the Lounges in mind. Accepting Plaintiffs' allegations as true, Defendants' consideration of a proposed amendment to the inheritance provision due to James Lester's failing health, is sufficient to show a credible threat of imminent injury to Plaintiffs' operation of the Lounges and establish standing. See Young Apartments, Inc. v. Town of Jupiter, 529 F.3d 1027, 1032, 1033, 1041 (11th Cir. 2008) (finding injury prong for standing satisfied when plaintiff

alleged defendant-locality undertook legislative action specifically with the plaintiff, among others, in mind).

Second, Plaintiffs have standing to proceed with challenges to the Business Tax Code. One cited ordinance enumerates the various fees the Lounges are required to pay to continue operation. Some fees accumulate "per year" and another accumulates "per day." Plaintiffs assert these fees are unconstitutional, and there is little doubt, to the extent the fees prove unconstitutional, Plaintiffs are subjected to an actual and continuing injury.

Plaintiffs also challenge the Business Tax Code because it allegedly grants unbridled discretion to the License and Inspection Department. "The Supreme Court has 'long held that when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for . . . a license.'" CAMP Legal Defense Fund, 451 F.3d at 1274 (quoting City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750, 755-56 (1988)). "Where a plaintiff alleges that a statute grants unbridled discretion, a plaintiff need only be 'subject to' the provision to establish a constitutional injury." Id. at 1275 (citation omitted). Plaintiffs allege that the License and Inspection Department possesses unbridled discretion to suspend or deny a Business Tax Certificate and Plaintiffs are required to hold a Business Tax

Certificate to operate; thus, the Lounges are subject to the provisions. As a result, Plaintiffs possess standing to challenge the Business Tax Code.

2. The Alcohol Code

As for the remaining ordinances in question, the Court first addresses whether Plaintiffs possess standing to challenge the Alcohol Code. The Parties' briefs following the show cause hearing dispute whether standing exists to claim the Alcohol Code is unconstitutional.

Plaintiffs' complaint contains no allegation of imminent injury related to transferring the alcohol licenses at issue. The closest Plaintiffs' complaint comes to asserting an imminent injury is to allege that applying for transfer of the license would be futile. Plaintiffs' futility speculation does not meet the standing requirements for several reasons.

First, unlike the strict prohibition against transfer of the adult entertainment license, the Alcohol Code allows the transfer of an alcohol license after the death of a license holder if the recipient qualifies for the license. Plaintiffs admit making no attempt to seek a transfer of the alcohol licenses for the Lounges. Plaintiffs speculate that the licenses would have been denied if the licensing authority determined the licenses would be used to sell alcohol in conjunction with nude dancing entertainment. Injury, however, cannot be hypothetical. The idea that Defendants

certainly would have rejected an application to transfer the alcohol licenses is not shown.

Second, although not cited in their complaint, Plaintiffs refer to A.R.C.C. Sec. 6-2-27(b) in their standing brief, which purportedly states:

> No holder of a license or business tax certificate for an adult entertainment establishment shall serve, sell, distribute or suffer the consumption or possession of any alcoholic beverage or controlled substance upon the premises of the licensee or business tax certificate holder; provided, however, nothing herein contained shall affect any vested rights.

(Pls.' Br. on Standing, Doc. 16, at 10.) In response, Defendants cite the most recent A.R.C.C. Sec. 6-2-27(b) version passed with the adoption of Ordinance 7654 prior to Plaintiffs filing the present action. The ordinance repealed the section Plaintiffs cite and replaced it with:

> A business tax certificate holder for an adult dance establishment / erotic dance establishment that can be permitted under the guidelines of the Augusta, Georgia Adult Entertainment Ordinance, is eligible to apply for on-premise alcohol licenses; provided, however, nothing herein contained shall affect any vested rights.

(Ordinance 7654, Doc. 17-1, at 1, 3.) Plaintiffs offer no reply to Defendants' argument that Plaintiffs could have applied for a transfer of their alcohol licenses under the new ordinance.

Third, Plaintiffs argued in the hearing and continue to argue in their brief that they refuse to abandon their nude dancing format. Plaintiffs conflate the Court's question in the hearing, which asked Plaintiffs, focusing solely on the alcohol license,

14

what prevented them from applying to transfer the license? In the hearing, Plaintiffs noted they could not receive an alcohol license absent a valid business permit. This argument raises two points.

Initially, it reveals the real issue and real injury to Plaintiffs is the inability to obtain proper permitting to continue operating the Lounges as adult entertainment businesses. In fact, the background section of Plaintiffs' brief regarding standing focuses almost exclusively on the Adult Licensing Code's transferability provision notwithstanding the Court's desire for additional briefing focused on the Alcohol Code and the Adult Zoning Code. (See Pls.' Br. on Standing, at 1–3.) The alcohol issue is ancillary to continuing that operation. The Court understands Plaintiffs' lack of desire to function solely as a bar but, focusing exclusively on the alcohol licenses, nothing prevented Plaintiffs from requesting a transfer of those licenses. Plaintiffs acknowledge that they could obtain alcohol licenses absent operation of the Lounges. (Id. at 10–11.) There is no guarantee the request to transfer the alcohol licenses would have been rejected, and Plaintiffs cannot point to injury that is more than speculative regarding the current Alcohol Code.

Plaintiffs continue to cite City of Lakewood, 486 U.S. at 755–56, for the proposition that a party need not actually apply for a license to obtain standing. (Pls.' Br. on Standing, at 10.) The Court is familiar with the proposition. Lakewood, however,

states, "[W]hen a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license." 486 U.S. at 755-56. Unlike Plaintiffs' allegation concerning the Business Tax Code, Plaintiffs do not assert the Alcohol Code grants unbridled discretion. (Compare Compl., ¶ 71, with id. ¶ 70.) Therefore, the Court does not find Lakewood controls the Court's decision regarding standing to challenge the Alcohol Code.

Fourth, Plaintiffs state that they have not applied for the 2020 renewal of the licenses. Whether Plaintiffs could have applied for and obtained a renewal of the licenses is not a question before the Court. "Article III standing must be determined as of the time that the plaintiff's complaint is filed." A&M Gerber Chiropractic LLC v. Geico Gen. Ins. Co., 925 F.3d 1205, 1212 (11th Cir. 2019). At the time Plaintiffs filed the complaint, on May 17, 2019, the 2019 alcohol licenses had not expired. Therefore, Plaintiffs had the opportunity to seek a transfer of the 2019 alcohol licenses after James Lester passed away prior to the expiration of the licenses. Although Plaintiffs lack an active permit to operate the overall business at this time, the fact that Plaintiffs allowed the alcohol permits to expire does not impact the standing analysis.

Fifth, Plaintiffs argue that challenging the Alcohol Code is necessary to satisfy the redressability prong of standing. But there is nothing to suggest that should Plaintiffs' challenge to the nontransferability provision under the Adult Entertainment Code prove successful, they would be unable to seek and obtain an alcohol license. The Court disagrees that challenging the Alcohol Code is necessary to satisfy redressability. In fact, to the extent Plaintiffs argue their inability to transfer or obtain alcohol licenses is connected to their failure to transfer or obtain a valid adult entertainment establishment permit, the inability to obtain an alcohol license is redressable by successfully challenging the Adult Licensing Code, not the Alcohol Code.

Sixth, to the extent Plaintiffs challenge the Alcohol Code from the standpoint that any attempt to apply for a new license will be denied, no current plaintiff possesses standing to assert futility concerning application for a new alcohol license. Presumably, at the time Plaintiffs filed the action, Plaintiffs wished to transfer the existing alcohol licenses to Thelmore James Lester under the Alcohol Code's transferability provision. Thelmore Lester is not a plaintiff in his individual capacity, but in his capacity as executor and heir of James Lester's Estate. Therefore, if Thelmore Lester seeks redress under the Alcohol Code, as the lawsuit is currently constructed, Thelmore Lester can only

assert a claim as to the inheritance of James Lester's alcohol licenses, not in regard to any new license he could potentially acquire individually.

### 3. The Adult Zoning Code

Likewise, the Court finds Plaintiffs lack standing to challenge the Adult Zoning Code. Plaintiffs' standing position seems to be that following James Lester's death, their grandfathered land use status under the Augusta Ordinances ceased. (Pls.' Br. on Standing, at 7-9.) Defendants concede standing in their response noting, "While not explicitly stated in the Complaint, it is Defendants' understanding that Plaintiffs allege that there is a substantial likelihood that Plaintiffs will no longer be able to operate their adult entertainment businesses in the current locations now that James Lester has died." (Defs.' Resp. to Pls.' Br. on Standing, Doc. 17, at 2.) The Court disagrees with the Parties. Plaintiffs even acknowledge that the continued operation — therefore, the continued lawful nonconforming use — depends on the challenges to the Adult Licensing Code and the Business Tax Code: "If the Court holds that the adult codes and business tax codes (as applied) are unconstitutional (as articulated in Count 1), the plaintiffs will be entitled to operate the businesses as a lawful prior nonconforming use[]." (Pls.' Br. on Standing, at 8; Compl., ¶ 81.) The complaint contains no

assertion that continued operation will cease pending the outcome of the remaining challenges.

Plaintiffs cite Tokyo Gwinnett, LLC v. Gwinnett Cty., 940 F.3d 1254, 1266 (11th Cir. 2019), for its recognition that a party may have standing to challenge grandfather rights under zoning ordinances. (Pls.' Br. on Standing, at 8-9.) Tokyo Gwinnett is inapposite to the analysis here. Tokyo Gwinnett contained an actual dispute over whether the locality should permit the plaintiff's continued operation as a lawful nonconforming use and imminent threats by the locality to shut down the business. 940 F.3d at 1259-60, 1264-66. Despite thorough review, the Court finds no such dispute or controversy here concerning the Adult Zoning Code; instead, Plaintiffs seek an advisory opinion regarding the application of land use restrictions as to them. See Lujan, 504 U.S. at 598 n.4 (Blackmun, J., dissenting) ("The purpose of the standing doctrine is to ensure that courts do not render advisory opinions rather than resolve genuine controversies between adverse parties."); see also Bochese, *supra*. The ordinance in question grandfathers businesses operating before January 1, 2003. Since that time, over the last seventeen years, there is no indication Augusta called into question the Lounges' lawful nonconforming use. There is no allegation that Defendants expressed any intent or plan to shut down the Lounges for violating Augusta land use ordinances. Overall, the issue appears to be, on the one hand, if

Plaintiffs' challenge to the Adult Licensing Code's nontransferability provision succeeds, Plaintiffs will continue to operate as a lawful nonconforming use. On the other hand, if Plaintiffs' challenge to the Adult Licensing Code proves unsuccessful, the Lounges will no longer operate. For these reasons, there is no real controversy or injury regarding the Adult Zoning Code and Plaintiffs lack standing to challenge it.

### III. JOINT PRELIMINARY INJUNCTION

Because the Court concludes Plaintiffs possess standing to challenge the Adult Licensing Code and the Business Tax Code, the Court exercises jurisdiction to address the substantive aspects of the case. Additionally, although Plaintiffs lack standing to challenge the Alcohol Code and the Adult Zoning Code for lack of an alleged injury, the Court may still issue the proposed injunction because resolution of the challenges to the Adult Licensing Code and Business Tax Code will resolve the suit. Because the Parties seek the injunction to maintain the status quo pending resolution of the merits of the case, the Court finds no reason to deny the Parties' joint request.

### IV. CONCLUSION

For the foregoing reasons, Plaintiffs lack standing to challenge the Alcohol Code and the Adult Zoning Code; thus, the

claims contemplating challenges to those sections of the Augusta-Richmond County Code are **DISMISSED WITHOUT PREJUDICE.**

Further, the Court **GRANTS** the Parties' joint motion for consent injunction (Doc. 13). **IT IS HEREBY ORDERED** that Plaintiffs shall continue to operate Discotheque Lounge and Joker's Lounge in their current locations pending the final outcome of this case. Upon application and payment of any required fees by Plaintiffs, Defendant shall issue to Plaintiffs business tax certificates and alcohol licenses. To the extent that Plaintiffs cease operation at the conclusion of the case, Plaintiffs will receive a prorated refund of any fees paid. It is agreed and understood that any business tax certificate or alcohol license issued to Plaintiffs during the pendency of this case is not a waiver of Augusta-Richmond County Code Secs. 6-1-15, 6-1-16(b) or any other section of the Augusta-Richmond County Code. **IT IS FURTHER ORDERED** that Plaintiffs shall continue to comply with all requirements of the Augusta-Richmond County Code pertaining to the operation of Discotheque Lounge and Joker's Lounge except that Plaintiffs may operate notwithstanding the requirements of Augusta-Richmond County Code Secs. 6-1-15 and 6-1-16(b).

**ORDER ENTERED** at Augusta, Georgia, this 14th day of April, 2020.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA