IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

DISCOTHEQUE, INC. and THELMORE     *
JAMES LESTER, as Executor of       *
the Estate of James Thelmore       *
Lester, and Next of Kin,           *
                                   *      CV 119-074
        Plaintiffs,                *
                                   *
            v.                     *
                                   *
AUGUSTA-RICHMOND COUNTY,            *
GEORGIA, et al.,                   *
                                   *
        Defendants.                *

_____

**O R D E R**

_____

Presently before the Court is Defendants Augusta-Richmond County, Georgia ("Augusta"), Mayor Hardie Davis, Jr., William Fennoy, Dennis Williams, Mary Davis, Sammie Sias, Bobby Williams, Ben Hasan, Sean Frantom, Brandon Garrett, Marion Williams, and John Clarke's motion for summary judgment.  (Doc. 35.)  For the following reasons, Defendants' motion is **GRANTED**.


## I. BACKGROUND

### A. The Lounges

James Lester began operating Joker's Lounge in 1971 and Discotheque Lounge in 1972 (the "Lounges").  (Defs.' Statement of Undisputed Material Facts ("SUMF"), Doc. 35-2, ¶ 1; Pls.' Resp. to Defs.' SUMF, Doc. 39-1, ¶ 1.)  Plaintiff Discotheque, Inc.

("Discotheque") assumed ownership of the Lounges in 1981.  (Defs.' SUMF, ¶ 2.)   However, James Lester maintained the business tax certificates for both businesses in his name.  (Id. ¶ 3.)

On April 19, 2019, James Lester passed away, and Plaintiff Thelmore James Lester was appointed as executor of his estate. (Id. ¶¶ 19-20.)   In his will, James Lester left all shares in Discotheque to his granddaughter, Carolyn Johnson.  (Id. ¶ 21.) Ms. Johnson later transferred 25% of her shares in Discotheque to her mother, January Rush.  (Id. ¶ 23.)  On May 17, 2019, Plaintiffs brought suit challenging various provisions of the Augusta-Richmond County Code ("A.R.C.C.").  (See Doc. 39, at 1; Compl., Doc. 1.)  Plaintiffs assert that in light of James Lester's death, they are unable to operate the Lounges due to various unconstitutional provisions of the A.R.C.C.

## B. Procedural History

Plaintiffs challenge four sections of the A.R.C.C. related to the regulation of adult entertainment businesses: (1) the Adult Licensing Code; (2) the Alcohol Code; (3) the Adult Zoning Code; and (4) the Business Tax Code.  (See generally, Compl.)  On April 14, 2020, the Court determined Plaintiffs lack standing to challenge the Alcohol Code and the Adult Zoning Code.  (See Doc. 28.)  On September 16, 2020, Defendants filed the present motion for summary judgment asking the Court to find the remaining challenged provisions of the Adult Licensing Code and the Business

2

Tax Code constitutional. (Doc. 35.) Plaintiffs' response to Defendants' motion for summary judgment fails to address Defendants' arguments regarding the Business Tax Code. (See Doc. 39.) Thus, the Court deems Plaintiffs' claims as to the Business Tax Code abandoned. Jones v. Bank of Am., N.A., 564 F. App'x 432, 434 (11th Cir. 2014) ("[W]hen a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned." (quoting Hudson v. Norfolk S. Ry. Co., 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001)). Therefore, the Court will only address Plaintiffs' challenges to provisions of the Adult Licensing Code.[1]

## C. The Adult Licensing Code

Plaintiffs have two main challenges to the Adult Licensing Code. First, Plaintiffs contend certain provisions defining adult entertainment establishments are overbroad and vague. (See Doc. 39, at 7-13.) Second, Section 6-1-15 (the "Non-transferability Provision") does not survive strict scrutiny. The relevant provisions are outlined below.

### 1. Definitions

(b) *Adult dancing establishment.* A business that features dancers displaying or exposing specified anatomical areas.

---

[1] The specific provisions Plaintiffs challenge are in Ordinance 6607, Chapter 1: Adult Entertainment of Title 6: License and Business Regulations. Ordinance 6607 was first adopted on April 1, 2003. (Defs.' SUMF, ¶ 5; Pls.' Resp. to Defs.' SUMF, ¶ 5.) Since then, it has been amended; however, the provisions at issue have not changed.

3

. . .

(g) *Erotic dance establishment*. A nightclub, theater or other establishment which features live performances by topless and/or bottomless dancers, go-go dancers, strippers or similar entertainers, where such performances are distinguished or characterized by an emphasis on specified sexual activities or specified anatomical areas.

A.R.C.C. §§ 6-1-2(b), (g).

### 2. Non-transferability Provision

No adult entertainment establishment permit may be sold, transferred or assigned by a permittee, or by operation of law, to any other person or persons. Any such sale, transfer or assignment or attempted sale, transfer or assignment shall be deemed to constitute a voluntary surrender of such permit, and such permit shall thereafter be null and void . . . .

A.R.C.C. § 6-1-15.

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts are "material" if they could "affect the outcome of the suit under the governing [substantive] law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and a dispute is genuine "if the non[-]moving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." Waddell v. Valley Forge Dental Assocs., Inc., 276 F.3d 1275, 1279 (11th Cir. 2001). The Court must view factual disputes in the light most favorable to the non-

moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must "draw all justifiable inferences in [the non-moving party's] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (citation, internal quotation marks, and internal punctuation omitted). The Court may not weigh the evidence or determine credibility. Anderson, 477 U.S. at 255.

The moving party has the initial burden of showing the Court the basis for its motion by reference to materials in the record. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the non-movant bears the burden of proof at trial, as Plaintiffs do here, the movant has two options as to how it can carry its initial burden. Id. at 1115-16. The movant may demonstrate an absence of evidence to support the nonmovant's case, or provide affirmative evidence demonstrating the nonmovant's inability to prove its case at trial. Id.

If the movant carries its initial burden, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. The non-movant must tailor its response to the method by which the movant carries its initial burden. For example, if the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick v. City

of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993).  On the other hand, if the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1116-17.  The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint.  See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981).  Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

In this action, the Clerk of Court provided all parties notice of the motion for summary judgment, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. 36.)  For that reason, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985), have been satisfied.  The time for filing materials in opposition has expired, the issues have been thoroughly briefed, and the motion is now ripe for consideration.

## III. DISCUSSION

"The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws 'abridging the freedom of speech.'"  Reed v. Town of Gilbert, 576 U.S. 155,

163 (2015) (quoting U.S. CONST. amend. I). It is well established that "nude dancing . . . is expressive conduct that is entitled to some quantum of protection under the First Amendment[.]" City of Erie v. Pap's A.M., 529 U.S. 277, 284 (2000) (citation omitted). However, "[t]he First Amendment does not immunize adult-oriented businesses from regulations designed to protect public health, safety, and general welfare." Tee & Bee, Inc. v. City of W. Allis, 936 F. Supp. 1479, 1485 (1996) (citing Young v. Am. Mini Theatres, Inc., 427 U.S. 50, 62 (1976)).

Plaintiffs argue that Augusta's Adult Licensing Code is unconstitutional in two ways: (1) the definitions regulating adult entertainment establishments are overly broad and vague and (2) the Non-transferability Provision does not survive strict scrutiny.

## A. Definitions

"According to [the] First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a substantial amount of protected speech."[2] United States v. Williams, 553 U.S. 285,

---

[2] Plaintiffs assert they have standing to bring an overbreadth challenge under Broadrick v. Oklahoma. 413 U.S. 601, 612 (1973) ("Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression."); see also Doran v. Salem Inn, Inc., 422 U.S. 922, 933 (1975) ("We have previously held that even though a statute or ordinance may be constitutionally applied to the activities of a particular defendant, that defendant may challenge it on the basis of overbreadth if it is so drawn as to sweep within its ambit protected speech or expression of other persons not before the Court.").

292 (2008).  "An ordinance is unconstitutionally overbroad 'when lawmakers define the scope of a statute to reach both unprotected expression as well as, at least potentially, protected speech.'" Ward v. Cnty. of Orange, 217 F.3d 1350, 1355 (11th Cir. 2000) (quoting Am. Booksellers v. Webb, 919 F.2d 1493, 1502 (11th Cir. 1990)).  However, "[t]he Supreme Court cautions that overbreadth is 'strong medicine' to be used 'sparingly and only as a last resort.'" Curves, LLC v. Spalding Cnty., 685 F.3d 1284, 1290 (11th Cir. 2012) (quoting Broadrick, 413 U.S. at 613).

"The first step in overbreadth analysis is to construe the challenged statute[.]" Williams, 553 U.S. at 293.  Next, the Court must determine "whether the statute, as [the Court has] construed it, criminalizes a substantial amount of protected expressive activity." Id. at 297.  Plaintiffs cite multiple sections of the A.R.C.C. in their Complaint and response to Defendants' motion for summary judgment.  However, the only sections Plaintiffs specifically argue violate the First Amendment overbreadth doctrine are Sections 6-1-2(b) and (g).  Thus, the Court will limit its discussion to those two sections.

The A.R.C.C. defines adult dancing establishment as "[a] business that features dancers displaying or exposing specified anatomical areas." A.R.C.C. § 6-1-2(b).  Additionally, an "erotic dance establishment" is defined as "[a] nightclub, theater or other establishment which features live performances by topless and/or

8

bottomless dancers, go-go dancers, strippers or similar entertainers, where such performances are distinguished or characterized by an emphasis on specified sexual activities or specified anatomical areas." A.R.C.C. § 6-1-2(g). Plaintiffs argue these definitions violate the First Amendment's overbreadth doctrine because they lack "temporal limitations" or exceptions for "isolated instances of nudity" or mainstream performances. (Doc. 39, at 9-13.)

First, the Court begins with the definition of an erotic dance establishment. Plaintiffs argue that Augusta's definition of an erotic dance establishment includes isolated instances of nudity and "is nearly identical to provisions in other jurisdictions which have been held unconstitutionally vague." (Doc. 39, at 11 n.2.) Specifically, Plaintiffs direct the Court to State v. Jones. 865 P.2d 138 (Ariz. Ct. App. 1993). In Jones, the county defined "Adult Live Entertainment Establishment" as "[a]n establishment which features topless or bottomless dancers, go-go dancers, exotic dancers, strippers or similar entertainers." Id. at 140. The Arizona court found the phrase did "not define with reasonable precision the dancing activity or degree of nudity necessary for a special permit." Id. at 141. Additionally, it found "due to the ambiguity of the ordinance, the targeted activity could embrace classical ballet, modern dance, and Broadway-type performances." Id. at 142. (internal quotations and citation omitted).

9

Although the first half of Augusta's definition is identical to the definition in <u>Jones</u>, Plaintiffs ignore the second half of the definition which limits its application to live performances "distinguished or characterized by an emphasis on specified sexual activities or specified anatomical areas." <u>See</u> A.R.C.C. § 6-1-2(g). For a business to qualify as an erotic dance establishment, it is not enough for a serious artistic play or ballet to include some incidental nudity. "[T]he live performance of plays, operas, or ballets at theatres, concert halls, museums, educational institutions, or similar establishments . . . do not communicate an erotic message with an *emphasis* on specified sexual activities or anatomical areas." <u>Gravely v. Bacon</u>, 429 S.E.2d 663, 664 (Ga. 1993) (emphasis added). Although an express "mainstream" exception may not be present, Augusta has included limiting language in its definition of erotic dance establishment.

Whether Augusta's definition of an adult dancing establishment is overly broad is a closer question. The Court agrees with Plaintiffs that, on its face, the definition may include establishments that occasionally feature nude dancing. Unlike the definition of erotic dance establishment, the definition of adult dancing establishment includes no limiting language or exception within it.

However, "courts have an obligation to construe the challenged provision narrowly, such that if it be readily

10

susceptible to a narrowing construction that would make it constitutional, it will be upheld." <u>Albanese Enters., Inc. v. City of Jacksonville</u>, No. 3:13-CV-1471, 2014 WL 585425, at *6 (M.D. Fla. Feb. 14, 2014) (quoting <u>Am. Booksellers</u>, 919 F.2d at 1500) (alterations adopted and internal quotation marks omitted). Here, Defendants argue that Section 6-6-42 of the A.R.C.C. limits the definitions in Section 6-1-2. Section 6-6-42 states:

> Live adult entertainment means any dancing or other entertainment provided by one or more live male or females performing either nude or partially nude; wet tee-shirt or bathing suit contests; Chippendale's or similar shows; or similar contests or events featuring participation by either the audience or other non-professional performers in nude or partially nude states. Live adult entertainment as used in this section does not include dancers or other performers performing live on a *regular* basis at adult entertainment establishments which are otherwise required to have a Business Tax Certificates.

A.R.C.C. § 6-6-42 (emphasis added). The Court agrees with this assertion. This provision provides a temporal limitation to adult entertainment establishments by limiting the definitions in Section 6-1-2 to performers performing live on a regular basis. The Court finds this narrowing construction saves Section 6-1-2(b).[3]

Plaintiffs also argue Section 6-1-2(b) could include "a lounge showcasing modern music videos that occasionally feature an exposed female breast." (Doc. 39, at 10.) The Court finds this

---

[3] Section 6-6-42 also narrows the scope of Section 6-1-2(g).

argument unpersuasive.  A lounge that occasionally features a music video displaying a specified anatomical area would not be considered a "dancing establishment" that "features dancers" under the plain reading of the ordinance.  And even so, "[a]n ordinance is facially invalid under the First Amendment only if it is 'substantially overbroad, that is, its application would be unconstitutional in a substantial proportion of cases.'" Gen. Video, Inc. v. Bd. of Cnty. Comm'rs of Sarasota Cnty., No. 8:04-CV-2055, 2008 WL 11438314, at *12 (M.D. Fla. Sept. 16, 2008) (quoting Agan v. Vaughn, 119 F.3d 1538, 1542 (11th Cir. 1997)). Plaintiffs have "not established that the application of [this provision] would be unconstitutional in a substantial proportion of cases." Id.  Therefore, the Court finds Sections 6-1-2(b) and (g) are not overly broad.

Additionally, Plaintiffs argue the challenged provisions are vague.  The vagueness doctrine "is an outgrowth . . . of the Due Process Clause of the Fifth Amendment." Williams, 553 U.S. at 304.  A court "should uphold [a vagueness] challenge only if the enactment is impermissibly vague in all of its applications." Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc., 455 U.S. 489, 495 (1982).  "We consider whether a statute is vague as applied to the particular facts at issue, for 'a plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'"

*Holder v. Humanitarian L. Project*, 561 U.S. 1, 18-19 (2010) (quoting *Vill. of Hoffman Ests.*, 455 U.S. at 495) (alterations adopted). The Supreme Court "[has] said that when a statute 'interferes with the right of free speech or of association, a more stringent vagueness test should apply.'" *Id.* (quoting *Vill. of Hoffman Ests.*, 455 U.S. at 499) However, "even to the extent a heightened vagueness standard applies, a plaintiff whose speech is clearly proscribed cannot raise a successful vagueness claim . . . for lack of notice. And he certainly cannot do so based on the speech of others." *Id.* at 20. Further, "a plaintiff may have a valid overbreadth claim under the First Amendment, but our precedents make clear that a Fifth Amendment vagueness challenge does not turn on whether a law applies to a substantial amount of protected expression. Otherwise the doctrines would be substantially redundant." *Id.* (internal citations omitted).

Plaintiffs have not advanced any real vagueness argument, and the provisions Plaintiffs challenge clearly apply to the Lounges. The Court finds the challenged provisions "provide[] a person of ordinary intelligence fair notice of what is prohibited." *Id.* (citing *Williams*, 553 U.S. at 304). "[P]erfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Williams*, 553 U.S. at 304 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989)). Thus, the Court finds Plaintiffs' vagueness challenge is without merit.

13

Defendants are entitled to summary judgment on Plaintiffs' overbreadth and vagueness claims.

## B. Non-transferability Provision, A.R.C.C. § 6-1-15

"In analyzing . . . [an] ordinance under the First Amendment it is critical to determine the appropriate level of scrutiny." Clarkson v. Town of Florence, 198 F. Supp. 2d 997, 1005 (E.D. Wis. 2002) (citing Deida v. City of Milwaukee, 176 F. Supp. 2d 859, 864 (E.D. Wis. 2001)). The Non-transferability Provision Plaintiffs challenge "may appear to be content based because [it] target[s] adult entertainment; so if we were applying general principles of First Amendment law, the ordinances would be subjected to strict scrutiny." Flanigan's Enters., Inc. of Ga. v. City of Sandy Springs ("Flanigan's II), 703 F. App'x 929, 933 (11th Cir. 2017) (citation omitted). However, "adult-entertainment ordinances are not treated like other content-based regulations." Id. (citation omitted). Under the secondary-effects doctrine, "[z]oning ordinances that regulate the conditions under which sexually oriented businesses may operate are evaluated as time, place, and manner regulations, following a three-part test set forth by the Supreme Court in [City of Renton v. Playtime Theatres, Inc., 475 U.S. 41 (1986)] and reaffirmed in [City of Los Angeles v. Alameda Books, Inc., 535 U.S. 425, 434 (2002)]." Id. at 933 (quoting Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cnty. ("Peek-A-Boo II"), 630 F.3d 1346, 1354 (11th Cir. 2011)).

The three-part test outlined in <u>Renton</u> is as follows:

> First, a court determines whether a challenged zoning ordinance is an invalid total ban on any given type of adult-entertainment business activity or is instead a time, place, and manner regulation. Second, if the ordinance is a time, place, and manner regulation, the court determines whether the ordinance should be subjected to intermediate or strict scrutiny. And third, if intermediate scrutiny applies, then the court assesses whether the ordinance serves a substantial government interest and allows for reasonable alternative channels of communication.

<u>Id.</u> (citing <u>Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cnty.</u> <u>("Peek-A-Boo I")</u>, 337 F.3d 1251, 1264 (11th Cir. 2003)).

Plaintiffs argue that <u>Reed</u> "fundamentally changed" the analysis established by <u>Renton</u>, and thus the Non-transferability Provision is subject to strict scrutiny. (<u>See</u> Doc. 39, at 15-19.) However, the Eleventh Circuit rejected that notion in <u>Flanigan's II</u>.[4] <u>See Flanigan's II</u>, 703 F. App'x at 935 ("But significantly, the majority opinion in <u>Reed</u> did not address the secondary-effects doctrine. For this reason alone, we cannot read <u>Reed</u> as abrogating either the Supreme Court's or this Circuit's secondary-effects precedents."). Additionally, Plaintiffs argue that "[e]ven if <u>Renton</u> survives <u>Reed</u>, it applies only to zoning ordinances. (Doc. 39, at 17 n.3.) The Eleventh Circuit was unpersuaded by this argument as well. <u>See Flanigan's II</u>, 703 F. App'x at 925 n.5

---

[4] "The Court's holding in <u>Flannigan's II</u> is in accord with decisions from two other federal appellate courts." <u>WBY, Inc. v. City of Chamblee</u>, No. 1:18-CV-05748, 2021 WL 3005379, at *8 (N.D. Ga. July 15, 2021) (citing <u>Free Speech Coal., Inc. v. U.S. Att'y Gen.</u>, 825 F.3d 149, 161 (3d Cir. 2016) and <u>BBL, Inc. v. City of Angola</u>, 809 F.3d 317, 326 n.1 (7th Cir. 2015)).

("Plaintiffs argue that some of the ordinances they challenge are not zoning ordinances but rather content-based ordinances of other varieties that are therefore subject to strict scrutiny. We are unpersuaded that Plaintiffs' zoning/non-zoning dichotomy has legal force when the ordinances in question clearly were designed to combat the adverse secondary effects of adult entertainment."). Thus, the Court will analyze the Non-transferability Provision pursuant to the Renton test.

The Non-transferability Provision is not a total ban on protected, expressive conduct; instead, it is a time, place, and manner restriction. Therefore, whether the Non-transferability Provision is subject to strict or intermediate scrutiny depends "on the government's interest in enacting the challenged ordinance." Id. at 925. "If the government sought to restrict the adult-entertainment-related speech because of the speech's content, then the ordinance must be evaluated under strict scrutiny." Id. (citation omitted).

However, "if the government intended to combat the 'secondary effects' of adult entertainment in the surrounding community—i.e., increased crime, decreased property values, etc.—then the ordinance is held to intermediate scrutiny." Id. (citation omitted). Augusta's "burden for 'establishing this purpose is not high.'" WBY, Inc., 2021 WL 3005379, at *5 (quoting Zibtluda, LLC v. Gwinnett Cnty., Ga. ex rel. Bd. of Comm'rs of Gwinnett Cnty.,

16

411 F.3d 1278, 1285 (11th Cir. 2005)).  "As explained by the Eleventh Circuit, the Supreme Court in <u>Renton</u> 'looked no further than the ordinance itself, which recited as its purpose the protection and preservation of the quality of life in the city.'" <u>Id.</u>  Here, Augusta has established that its purpose in enacting Title 6, Chapter 1 of the A.R.C.C., which includes the Non-transferability Provision, was to combat the negative secondary effects of adult entertainment in the community.  <u>See</u> A.R.C.C. § 6-1-1 (outlining findings and public purpose of Title 6, Chapter 1).  Thus, the Non-transferability Provision is subject to intermediate scrutiny.

Under intermediate scrutiny, an ordinance will "be upheld so long as the city . . . [can] show[] that its ordinance was designed to serve a substantial government interest and that reasonable alternative avenues of communication remained available." <u>Alameda Books</u>, 535 U.S. at 434; <u>Lady J. Lingerie, Inc. v. City of Jacksonville</u>, 176 F.3d 1358, 1361 (1999) ("Most zoning ordinances easily meet these standards[.]").  "Combating the harmful secondary effects of adult businesses, such as increased crime and neighborhood blight, is a substantial government interest." <u>Lady J. Lingerie</u>, 176 F.3d at 1361 (citing <u>Renton</u>, 475 U.S. at 50-52); <u>WBY, Inc.</u>, 2021 WL 3005379, at *6 ("It has been by now clearly established that reducing the secondary effects associated with adult businesses is a substantial government interest 'that must

17

be accorded high respect.'" (quoting <u>Daytona Grand, Inc. v. City</u>
<u>of Daytona Beach</u>, 490 F.3d 860, 873-74 (11th Cir. 2007)). Under
the Eleventh Circuit's burden-shifting framework:

> In determining whether the ordinance [survives
> intermediate scrutiny], the county . . . first bears the
> initial burden of producing the evidence that it has
> relied on to reach the conclusion that the ordinance
> furthers its interest in reducing secondary effects. If
> the governmental entity has produced evidence that it
> reasonably believed to be relevant to its rationale for
> enacting the ordinance, then the burden shifts to the
> plaintiff to cast direct doubt on this rationale, either
> by showing that the evidence does not support its
> rationale or by producing evidence disputing the local
> government's factual findings. If the plaintiff sustains
> its burden, the burden shifts back to the government to
> supplement the record with evidence renewing support for
> a theory that justifies the ordinance.

<u>Peek-A-Boo II</u>, 630 F.3d at 1355 (internal citations and quotation
marks omitted).

Augusta may satisfy its burden with "very little evidence."
<u>Id.</u> Augusta "is not required to 'conduct new studies or produce
evidence independent of that already generated by other cities, so
long as whatever evidence [it relied] upon is reasonably believed
to be relevant to the problem that [the challenged ordinance]
addresses[.]'" <u>Id.</u> (quoting <u>Renton</u>, 475 U.S. at 51-52). Augusta
relied on its experience within the county[5] and with neighboring
counties, studies conducted by various cities, and federal case
law when enacting Title 6, Chapter 1 of the A.R.C.C. <u>See</u> A.R.C.C.

---

[5] Augusta's County Commissioners also considered testimony from Gregory Smith
of the Richmond County Sheriff's Office. (<u>See</u> Doc. 35-5, at 45-46.)

§ 6-1-1.  On that basis, the Court finds Augusta "has articulated a substantial government interest and permits adequate alternative channels of communication."[6]  WBY, Inc., 2021 WL 3005379, at *6. Moreover, Plaintiffs raise no objection to the evidence relied on by Augusta.   Thus,  the  Non-transferability  Provision  passes constitutional muster under the Renton framework.

Plaintiffs argue in the alternative that "if strict scrutiny does not apply, the ordinances at issue here cannot survive review under Alameda Books" because "they fail to leave the quantity and accessibility of speech substantially intact."  (Doc. 39, at 19.) However,  the  Eleventh  Circuit  rejected  the  same  argument  in Flanigan's II and declined to adopt the "proportionality test" articulated by Justice Kennedy in his Almeda Brooks concurrence. Flanigan's II, 703 F. App'x at 937 ("We therefore decline to adopt Justice Kennedy's proportionality test."); see also WBY, Inc., 2021 WL 3005379, at *6 ("Like [the plaintiff's] argument regarding the  effect  of  Reed,  its  reliance  on  Justice  Kennedy's proportionality test runs headlong into a threshold obstacle: it too has been considered and rejected by the Eleventh Circuit."). The Court finds no reason to depart from the Eleventh Circuit's

---

[6] Plaintiffs argue that they "will lose their adult entertainment businesses at their locations." (Doc. 39, at 21.)  However, the Court only need to determine whether the ordinance "leaves open reasonable *alternative* avenues of expression; it does not guarantee that the plaintiffs will be able to operate in their present locations."  Lady J. Lingerie, 176 F.3d at 1365-66.  As Defendants argue, the Non-transferability Provision does not limit Plaintiffs from applying for an adult entertainment permit.

decision in Flanigan's II.   Thus, Defendants are entitled to summary judgment on Plaintiffs' First Amendment free speech claim regarding the Non-transferability Provision.

Plaintiffs also argue the Non-transferability Provision violates their free speech rights under the Georgia Constitution. As Plaintiffs note, "the Georgia Supreme Court has held that the Georgia Constitution requires a 'city to narrowly draw its regulations to suppress no more speech than is necessary to achieve the city's goals.'" Camp Legal Def. Fund, Inc. v. City of Atlanta, No. 1:13-CV-01258, 2014 WL 12013433, at *7 (N.D. Ga. June 6, 2014) (quoting Statesboro Publ'g Co. v. City of Sylvania, 516 S.E.2d 296, 299 (Ga. 1999)).   "Based on this language, it would appear Georgia's constitutional protection of free speech is broader than the protection afforded by the First Amendment." Id.   However, two months after Statesboro, the Georgia Supreme Court held "Georgia's constitutional free speech provision does not confer any greater free speech right than that protected by the First Amendment[.]" Cahill v. Cobb Place Assocs., 519 S.E.2d 449, 450 (Ga. 1999).   "The Georgia Supreme Court . . . recognized this apparent contradiction [in Grady v. Unified Gov't of Athens-Clarke Cnty., 715 S.E.2d 148, 151 (Ga. 2011)]." Camp Legal Def. Fund, Inc., 2014 WL 12013433, at *8.   However, since the regulations at issue in Grady "survive[d] review under either the 'least restrictive' or 'narrowly tailored' tests, the Georgia Supreme

20

Court left 'further consideration of this important issue for a future case.'"   Id.   (citation omitted).

The Court finds the Non-transferability Provision survives the "least restrictive" test as well.   Plaintiffs' argument that the Non-transferability Provision "terminates" adult entertainment establishments is simply not true.   It merely requires that each owner of an adult entertainment business apply for its own permit.[7] Plaintiffs' real issue seems to be with Augusta's Zoning Code, which the Court previously determined Plaintiffs lack standing to challenge.   Thus, Defendants are also entitled to summary judgment on Plaintiffs' claim under the Georgia Constitution.

Finally, Plaintiffs argue the Non-transferability Provision violates substantive due process under the Georgia Constitution. (Doc. 39, at 30-31.)   First, the Court has already determined this provision is content-neutral and subject to intermediate scrutiny—which it passes.   Further, as Defendants argue, Plaintiffs have no vested interest in James Lester's permit.   See Goldrush II v. City of Marietta, 482 S.E.2d 347 (Ga. 1997) (discussing vested property rights).   Thus, the Non-transferability Provision does not violate substantive due process and   Defendants are entitled to summary judgment.

---

[7] "Legislation which defines the qualifications for one who engages in an occupation or profession affecting the public health, safety, morals or welfare is a proper exercise of the police power."   Airport Book Store, Inc. v. Jackson, 248 S.E.2d 623, 628 (Ga. 1978).

## IV. CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment (Doc. 35) is **GRANTED**.  The Clerk is directed to **ENTER JUDGMENT** in favor of **DEFENDANTS, TERMINATE** all other pending motions, if any, and **CLOSE** this case.  As a result of granting Defendants' motion for summary judgment, the Court's injunction issued on April 14, 2020 is now **LIFTED**.  (Doc. 28.)

**ORDER ENTERED** at Augusta, Georgia, this 13th day of September, 2021.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA