IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| DISCOTHEQUE, INC., and THELMORE JAMES LESTER, as Executor of the Estate of James Thelmore Lester, and Next of Kin,<br><br>   PLAINTIFFS,<br><br>v.<br><br>AUGUSTA-RICHMOND COUNTY, GEORGIA,<br><br>and<br><br>MAYOR HARDIE DAVIS, JR., WILLIAM FENNOY, DENNIS WILLIAMS, MARY DAVIS, SAMMIE SIAS, BOBBY WILLIAMS, BEN HASAN, SEAN FRANTOM, BRANDON GARRETT, MARION WILLIAMS, AND JOHN CLARKE, all in their individual capacities as Members of the Augusta-Richmond County Commission,<br><br>   DEFENDANTS. | CIVIL ACTION NO.:<br>1:19-cv-00074 |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL**

COME NOW Defendants Augusta, Georgia, Mayor Hardie Davis, Jr., William Fennoy, Dennis Williams, Mary Davis, Sammie Sias, Bobby Williams, Ben Hasan, Sean Frantom, Brandon Garrett, Marion Williams, and John Clarke, and file this Response to Plaintiff's Emergency Motion for Injunction Pending Appeal, showing the Court the following:

1

I.  **BACKGROUND**

On May 17, 2019, Plaintiffs filed this action against Augusta, Georgia and its Commissioners challenging Augusta's adult entertainment ordinances. Doc. 1. Plaintiffs and Defendants entered into a consent injunction whereby Plaintiffs could continue to operate Discotheque Lounge and Joker's Lounge in their current locations pending the outcome of the case. Doc. 21. On September 13, 2021, this Court granted summary judgment to Defendants, upholding Augusta, Georgia Code §§ 6-1-15 and 6-1-2(b) and (g) as constitutional. Doc. 50. The Court also lifted the injunction. *Id*. Subsequently, Plaintiffs filed a notice of appeal and an emergency motion to restore the injunction pending the appeal. Docs. 52, 54.

II.  **ARGUMENT**

Federal Rule of Civil Procedure 62(d) provides that the court may suspend, modify, restore, or grant an injunction while an appeal is pending. For the Court to grant such an injunction, the moving party must demonstrate: 1) a substantial likelihood of success on the merits, 2) irreparably injury absent the requested injunction, 3) that the injunction will not substantially injure the other interested parties, and 4) that the public interest will not be adversely affected. *Touchston v. McDermott*, 234 F.3d 1130, 1132 (11th Cir. 2000); *In re Grand Jury Proceedings*, 975 F.2d 1488, 1492 (11th Cir. 1992). The first two factors are the most critical. *LabMD, Inc. v. FTC*, 678 Fed.Appx. 816, 819 (11th Circ. 2016). An injunction may also be granted where the movant shows a substantial case on the merits instead of a substantial likelihood of success provided the other factors weigh heavily in favor of granting the injunction. *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986) (quoting *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981)).

**A. Plaintiffs Have Not Demonstrated A Likelihood Of Success On The Merits.**

**1. The proportionality test is not applicable to the facts of this case.**

Plaintiffs claim that § 6-1-15 of the Augusta, Georgia Code fails the proportionality test espoused by Justice Kennedy in *City of Los Angeles v. Alameda Books*. However, the proportionality test is not binding precedent. While the court in cases such as *Peek-a-Boo* and *Daytona Grand* stated that Justice Kennedy's opinion was the holding, those courts did not actually adopt or apply the proportionality test. *Flanigan's Enters v. City of Sandy Springs,* 703 Fed. Appx. 929, 937 (11th Cir. 2017). Thus, those courts' discussions of *Alameda Books* are dicta and have no precedential value. *Flanigan's* at 937 (citing *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1298 (11th Cir. 2010)). As the Court held in *Flanigan's*, "[b]ecause Justice Kennedy's *Alameda Books* proportionality test cannot be harmonized with the plurality's opinion, it is not binding Supreme Court precedent." *Id.* at 936-37.

When a fragmented court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding is the position taken by those who concurred on the narrowest grounds. *Marks v. United States*, 430 U.S. 188, 193 (1977). The plurality opinion in *Alameda Books* discusses Justice Kennedy's concurrence and states that it views his proportionality test "as simply a reformulation of the requirement that an ordinance warrants intermediate scrutiny if it is a time, place, and manner regulation and not a ban." *Alameda Books* at 443. The plurality felt that Justice Kennedy applied a heightened scrutiny because he viewed the subject regulation not as content-neutral but as a ban on adult video arcades. *Id.* at 443. However, the issue of a ban was not before the court, and the plurality did not agree that there is an alternate

3

proportionality test in place of intermediate scrutiny for time, place, and manner regulations. *Id*. Thus, the holding of *Alameda Books* can only be found in the plurality's opinion which reaffirmed *Renton's* holding that content neutral regulations are subject to intermediate scrutiny. *See id.* at 439. Because § 6-1-15 is a content-neutral licensing regulation that does not ban any adult entertainment, this Court correctly applied *Renton* and found that the regulation survives intermediate scrutiny.

Additionally, even if the proportionality test were binding precedent, it would not be applicable to § 6-1-15. In his opinion, Justice Kennedy focused on zoning ordinances used to disperse adult businesses. He stated that zoning ordinances may reduce negative secondary effects without substantially limiting speech. *Alameda Books* at 450. Thus, he felt that requiring adult businesses to disperse must not cause the businesses to close. *Id*. at 451. Kennedy's proportionality language can only apply to classic zoning ordinances that regulate land uses. *See Fantasyland Video, Inc. v. County of San Diego*, 505 F.3d 996, 1005 (9th Cir. 2007); *Ctr. For Fair Pub. Policy v. Maricopa County*, 336 F.3d 1153, 1163 (9th Cir. 2003). Section 6-1-15 is not a zoning ordinance; it is simply a licensing requirement that prohibits individuals from transferring adult entertainment permits. Obviously, Justice Kennedy did not intend for the proportionality test to apply to licensing requirements because it would be used to prevent all licenses. Justice Kennedy even states in his opinion that the central holding of *Renton* is sound and that "a [regulation] that is designed to decrease secondary effects and not speech should be subject to intermediate rather than strict scrutiny." *Alameda Books* at 448. Thus, Plaintiff fails to explain how the proportionality test is applicable to this Court analysis of § 6-1-15.

Furthermore, even if the proportionality test applied to § 6-1-15, it would meet the requirements. As this Court previously determined, § 6-1-15 is part of Augusta's adult

4

entertainment regulations which are meant to limit negative secondary effects while not limiting speech. It simply prohibits transfer of adult entertainment permits, but it does not prohibit Plaintiffs or anyone else from applying and receiving their own permits. *See* Augusta, Georgia Code §§ 6-1-11, 6-1-12. Without any explanation, Plaintiffs claim that they will not have the ability or desire to open at new locations. Doc. 43-1 ¶ 2. However, as Plaintiffs admit, they can apply for their own permits and open at new locations. Thus, any reduction in speech from enforcement is not due to the operation of § 6-1-15 but to Plaintiffs' choice not to pursue their own permits such that the ordinance does not run afoul of proportionality. *See Entm't Prods., Inc. v. Shelby County*, 721 F.3d 729, 741 (6th Cir. 2013). Unlike Plaintiffs suggest, nothing in § 6-1-15 prevents them from opening in new locations and nothing prevents adult entertainment establishments from serving alcohol. *See* Augusta, Georgia Code § 6-2-27. Thus, the quantity and accessibility of speech is intact. Section 6-1-15 would not fail the proportionality test.

**2. The Court properly found that §§ 6-1-2(b) and (g) are not overbroad.**

Plaintiffs conflate the Court's findings with regard to the definitions of erotic dance establishment and adult dancing establishment in an attempt to confuse the issues and make it appear that there are serious legal questions for appeal. This Court provided sperate analyses and reasonings for its findings that §§ 6-1-2(b) and (g) were not overbroad.

With regard to the definition of erotic dance establishment in § 6-1-2(g), Plaintiffs assert that this Court was incorrect in applying a limiting construction because it relied on *Gravely* which relied on *LaRue*, and *LaRue* was subsequently disavowed. In *LaRue*, the California Department of Alcoholic Beverage Control prohibited adult entertainment in establishments with liquor licenses. *California v. LaRue*, 409 U.S. 109, 111-12 (1972).

5

The court overruled a lower court holding that the regulations conflicted with the First and Fourteenth Amendments. *Id.* at 110. The court did not analyze the department's regulations under any First Amendment or adult entertainment jurisprudence. Instead, the court reasoned that states have broad power under the Twenty-first Amendment to regulate alcohol. *Id.* at 114.

In *Gravely*, the owner of a nude dancing club challenged a Smyrna ordinance prohibiting the sale of alcohol at erotic dance establishments. *Gravely v. Bacon*, 263 Ga. 203 (1993). The plaintiff claimed that the ordinance was not narrowly tailored to exclude mainstream entertainment and took issue with the definition of erotic dance establishment. *Id.* 204-5. The city of Smyrna defined erotic dance establishment identically to the way Augusta has in § 6-1-2(g). *Id.* at 204. The court held that the definition was not overbroad. *Id.* at 207. The *LaRue* holding, which was only cited in a footnote in *Gravely*, was not relied on or essential to that holding. The court simply noted that in *LaRue* that court held that a regulation could prohibit alcohol in adult entertainment establishments because Smyrna had a similar prohibition. *Id.* at 207 n.5. In a concurring opinion, Justice Hunt actually discusses *LaRue* and provides that "notwithstanding the very broad powers accorded the states under the Twenty-first Amendment to regulate the sale of alcohol, in analyzing restrictions on nude dancing in establishments where alcohol is sold, we must apply the three-prong test of *Paramount Pictures*." *Id.* at 208. This is precisely what the *Gravely* Court did in its holding and what Justice Hunt concurred in. *Id.* at 207. Thus, nothing in *Gravely* relies on *LaRue's* discussion of the Twenty-first Amendment as the Court properly analyzed the regulations under the First Amendment.

In *44 Liquormart*, the Supreme Court disavowed *LaRue* only "insofar as it relied on the Twenty-first Amendment." 517 U.S. 484, 516 (1996). The court, however, did not disturb *LaRue's* holding and stated that the result would have been the same even if it had placed no reliance of the Twenty-first Amendment. *Id*. Nothing in the analysis of the Twenty-First Amendment as discussed in *LaRue* or *44 Liquormart* is relevant to *Gravely's* holding that Smyrna's definition of erotic dance establishment was not overbroad. The *Gravely* court actually relied on *Young v. Am. Mini Theatres*, a Supreme Court case upholding similar definitions as constitutional. *Gravely* at 205 (citing *Young*, 427 U.S. 50, 53 (1976)). Thus, just as Smyrna's definition of erotic dance establishment was not overbroad, Augusta's identical definition in § 6-1-2(g) is also not overbroad.

Plaintiffs cite to several cases in other circuits for the proposition that limiting language must appear in the text of a law to save it from overbreadth challenge. In those cases, the courts did not state that any specific limiting language must appear in the text; the courts were simply analyzing regulations that contained the word "regularly." *84 Video/Newstand, Inc. v. Sartini,* 455 F. App'x 541, 561 (6th Cir. 2011); *Richland Bookmart, Inc. v. Knox Cty., Tenn.,* 555 F. 3d 512, 519 (6th Cir. 2009); *Baby Dolls Topless Saloons, Inc. v. City of Dallas,* 295 F.3d 471, 482 (5th Cir. 2002); *Schultz v. City of Cumberland*, 228 F.3d 831, 850 (7th Cir. 2000). However, the courts never held that regulations must contain the word regularly. Furthermore, this Court did not narrow the definition by anything that was not in the text of § 6-1-2. The court simply looked to the rest of the code section which clarifies the definition of erotic dance establishment with its definitions of specified sexual activities and specified anatomical areas. Doc. 50; *See* also Augusta, Georgia Code §§ 6-1-2(n) and (o).

7

With regard to the definition of adult dancing establishment in § 6-1-2(b), Plaintiffs claim that the court should not have narrowed it with § 6-1-42(a) because Defendants did not reference this section in their summary judgment brief and the section itself is unconstitutional. However, the constitutionality of § 6-1-42 is not before this Court. Plaintiffs did not mention or challenge this code section in their complaint or brief. Docs 1, 39. A court's job in overbreadth analysis is to construe a statute and determine if it criminalizes a substantial amount of protected speech. *U.S. v. Williams,* 553 U.S. 285, 292 (2008); *New York v. Ferber*, 485 U.S. 747, 771 (1982). A statute should not be deemed facially invalid unless it is not readily subject to a narrowing construction. *Gravely* at 206. Declaring a regulation overbroad is strong medicine and should be employed sparingly and only as a last resort. *Curves, LLC v. Spalding County*, 685 F.3d 1284, 1290 (11th Cir. 2012) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601 (1973)). Thus, the Court was required to view § 6-1-2(b) in the context of the entire Augusta Code including § 6-1-42(a).

Therefore, the Court correctly decided that § 6-1-15 passes constitutional muster under *Renton* and that §§ 6-1-2(b) and (g) are not overbroad. Plaintiffs have not demonstrated a substantial likelihood of success of the merits on the appeal. Relatedly, because Plaintiffs' arguments are against the weight of authority, Plaintiffs fail to present any serious legal questions for review. Even if Plaintiffs had presented a serious legal question under the alternative test for an injunction pending appeal, the other factors as discussed below do not weigh heavily in Plaintiffs' favor. *See Garcia-Mir* at 1454.

**B. Absent An Injunction, Plaintiffs Will Not Suffer Irreparable Harm.**

Plaintiffs seemingly claim that without an injunction they would be unable to offer nude dancing entertainment and/or would lose profits. Doc. 54, p. 16. While the loss of

8

First Amendment freedoms may constitute irreparable harm, Plaintiffs are not at risk of losing any freedom absent an injunction. Sections 6-1-15 and 6-1-2 of the Augusta, Georgia Code do not prevent Plaintiffs from speaking or operating adult entertainment establishments. Section 6-1-15 simply prevents Plaintiffs' from inheriting an adult entertainment permit. If Plaintiffs were not granted an injunction, they have the option of applying for their own adult entertainment permit which would allow them to operate adult entertainment establishments. If Plaintiffs chose to close their businesses and not obtain their own permit, that would be within their discretion and not because of enforcement of the challenged ordinances. Direct penalization and not incidental inhibition of First Amendment rights constitute irreparable injury. *Cate v. Oldham*, 707 F.2d 1176, 1188 (11th Cir. 1983). Augusta's licensing requirement provides only an incidental inhibition on Plaintiffs' rights.

Plaintiffs also assert that they would lose a substantial amount of business. However, this does not amount to irreparable harm as Plaintiffs could be awarded monetary damages should it prevail. *Sunset Novelties of Hinesville v. City of Hinesville*, No. 409CV138, 2010 U.S. Dist. LEXIS 163044, *11 (S.D. Ga. Apr. 22, 2010); *Fla. Video Xpress v. Orange County*, No. 97-616-CIV-ORL-22, 1997 U.S. LEXIS 17974, *21 (M.D. Fl. Oct 24, 1997), *adopted by Florida Video Xpress v. Orange County,* 983 F.Supp. 1091, 1099. (M.D. Fl. Oct 24, 1997). While Plaintiffs allege that they may lose their entire business and have to file bankruptcy if an injunction is not granted, Defendants hereby dispute that allegation. Courts have found irreparable harm where movants allege potential loss of an entire business or bankruptcy only when the nonmovant did not dispute the allegation or the movants provided sufficient evidence. *See Doran v. Salem Inn., Inc.* 422 U.S. 922, 932 (1975); *Mesa Air Group v. Delta Air Lines, Inc.* No. 1:08-CV-

9

1334-CC, 2008 U.S. Dist. LEXIS 145306 *37 (N.D. Ga. June 25, 2008). Here, Plaintiffs have not provided any supporting evidence that their entire business is likely to fail. Thus, Plaintiffs fail to show that they will suffer irreparable harm without an injunction.

### C. Defendants And The Public Would Be Harmed By Plaintiffs' Requested Injunction.

Where the nonmovant regarding an injunction is the government, the third and fourth factors regarding damage to opposing party and the public interest can be consolidated. *Otto v. City of Boca Raton*, 981 F.3d 854, 870 (2020) (citing *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006)). Here, it would be a disservice to Defendants and the public if the Court awarded an injunction because the Court has already held that the challenged ordinances are constitutional. Furthermore, Plaintiffs have not demonstrated a likelihood of success on the merits or any irreparable harm. Defendants and the public have an interesting in Augusta being able to properly enforce its ordinances. While the public has no interest in enforcement of an unconstitutional ordinance, the ordinances at issue here have been held constitutional. Thus, the balance of the equities does not favor Plaintiffs.

### III. CONCLUSION

Based upon the forgoing, Plaintiffs have not shown a likelihood of success on the merits or irreparable harm, such that the factors for granting an injunction pending appeal do not weigh in Plaintiffs' favor. Therefore, the Court should deny Plaintiffs' requested injunction.

Respectfully submitted this 27th day of September 2021.

        /s/Tameka Haynes
**Randolph Frails**
Georgia Bar No. 272729
**Tameka Haynes**
Georgia Bar No. 453026

*Attorneys for Defendants*

**Frails & Wilson LLC**
211 Pleasant Home Road, Suite A1
Augusta, GA 30907
Phone: 706-855-6715
Facsimile: 706-855-7631
randyfrails@frailswilsonlaw.com
thaynes@frailswilsonlaw.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| DISCOTHEQUE, INC., and THELMORE JAMES LESTER, as Executor of the Estate of James Thelmore Lester, and Next of Kin,<br><br>    PLAINTIFFS,<br><br>v.<br><br>AUGUSTA-RICHMOND COUNTY, GEORGIA,<br><br>and<br><br>MAYOR HARDIE DAVIS, JR., WILLIAM FENNOY, DENNIS WILLIAMS, MARY DAVIS, SAMMIE SIAS, BOBBY WILLIAMS, BEN HASAN, SEAN FRANTOM, BRANDON GARRETT, MARION WILLIAMS, AND JOHN CLARKE, all in their individual capacities as Members of the Augusta-Richmond County Commission,<br><br>    DEFENDANTS. | CIVIL ACTION NO.:<br>1:19-cv-00074 |

**CERTIFICATE OF SERVICE**

    This is to certify that the within and foregoing **Response** was served upon the Plaintiffs in accordance with ECF rules by electronically filing copies with the Clerk of Court using the CM/ECF system, by email, or by depositing a copy in the United States Mail with adequate postage thereon to:

Cary S. Wiggins
Wiggins Law Group, Suite 401
260 Peachtree Street, NW
Atlanta, GA 30303

William Sussman
347 Greene Street
Augusta, GA 30901

12

This 27th day of September 2021.

          /s/Tameka Haynes
**Randolph Frails**
Georgia Bar No. 272729
**Tameka Haynes**
Georgia Bar No. 453026

*Attorneys for Defendants*

**Frails & Wilson LLC**
211 Pleasant Home Road, Suite A1
Augusta, GA 30907
Phone: 706-855-6715
Facsimile:  706-855-7631
randyfrails@frailswilsonlaw.com
thaynes@frailswilsonlaw.com